# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJIV KAKKAR,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>CHESTNUT et al.,<br><br>　　　　　　　Respondents. | Case No. 1:25-CV-1627 JLT SAB<br><br>ORDER GRANTING IN PART REQUEST FOR TEMPORARY RESTRAINING ORDER AND REFERRING MATTER TO ASSIGNED MAGISTRATE JUDGE<br><br>(Doc. 3) |

## I.  INTRODUCTION

Before the Court for decision is Sanjiv Kakkar's ("Petitioner") request for a temporary restraining order (Doc. 3) filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing immigration detention. (Doc. 1.) Having evaluated the TRO request, (Doc. 3), Respondents' opposition, (Doc. 8), and Petitioner's reply (Doc. 10) in light of the entire record, the Court **GRANTS IN PART** the requested TRO and REFERS the matter to the assigned magistrate judge for a determination on the merits.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a 64-year-old national of India and citizen of the United Kingdom. (Doc. 1 at 2; Doc. 1-1 at 8.) He entered the United States as a lawful permanent resident on May 27, 1992, and has lived in the country since then. (*Id*.) He is married to a U.S. citizen with whom he shares four U.S. citizen children. (*Id*.) He is self-employed and runs his own business. (Doc. 8-1 at 46.)

On November 8, 2016, Petitioner was convicted under 18 U.S.C. §§ 1014 and 2 for

1  making false statements to a bank and aiding and abetting, and 18 U.S.C. § 1343 for wire fraud.
2  (Doc. 1 at 2 n.1; Doc. 8 at 2; Doc. 8-1 at 22.)  On April 3, 2017, the court sentenced him to 48
3  months in federal prison and ordered him to pay $4,208,566.36 in restitution.  (Doc. 1 at 2; Doc.
4  8-1 at 22–26, 45); *see also United States v. Kakkar*, No. 5:13-cr-00736-EJD.  The court also
5  imposed a three-year term of supervised release from April 13, 2021, to April 12, 2024.  (Doc. 8
6  at 2; Doc. 8-1 at 45.)  Petitioner's crimes constituted aggravated felonies since the loss to the
7  victim exceeded $10,000.  (Doc. 8 at 2); *see also* 8 U.S.C. § 1101(a)(43)(M)(i).  Apart from this
8  conviction, Petitioner has no further criminal history.  (Doc. 1 at 3.)
9      While incarcerated, on October 12, 2018, Immigration Customs and Enforcement
10 encountered the Petitioner at the Taft Federal Correctional Facility and interviewed him.  (Doc. 1
11 at 2; Doc. 8-1 at 19.)  On November 2, 2018, Department of Homeland Security issued a Notice
12 to Appear which placed the Petitioner into removal proceedings.  (Doc. 1 at 2; Doc. 1-1 at 6.)
13 DHS charged the respondent with removability under the Immigration and Nationality Act §
14 237(a)(2)(A)(iii), as an alien who has committed an aggravated felony as defined in INA §
15 101(a)(43)(M).  (Doc. 8-1 at 8, 11.)  Petitioner began attending removal proceedings while
16 incarcerated under the Institutional Hearing Program, which allows non-citizens to undergo
17 removal proceedings while serving time in certain correctional facilities.  (Doc. 1 at 2.)  On April
18 26, 2019, Petitioner filed a Motion to Terminate arguing that DHS had not met its burden in
19 establishing removability.  (Doc. 8-1 at 12.)  At a master hearing on May 22, 2019, the
20 Immigration Court denied Petitioner's Motion to Terminate and sustained the charge of removal.
21 (*Id.*)
22     On August 27, 2019, United States Citizenship and Immigration Services approved the I-
23 130 Petition for Alien Relative filed by Petitioner's spouse.  (Doc. 8-1 at 3.)  Petitioner was
24 subsequently released from prison on April 13, 2021, (Doc. 8-1 at 42), and was not detained by
25 ICE at that time.  (Doc. 1 at 2.)  Upon release, Petitioner continued to attend his removal
26 proceedings in a non-detained setting.  (Doc. 1 at 2.)  On December 6, 2023, Petitioner submitted
27 an I-485 application to register permanent residence or adjust status and requested an I-601
28 waiver of inadmissibility.  (Doc. 8-1 at 3.)

On April 8, 2024, at the end of his supervised release term, a U.S. Probation Officer recommended that Petitioner's supervision terminate as scheduled because he has "remained in compliance with the release conditions, apart from his outstanding restitution balance." (Doc. 8-1 at 45–46.) The Officer indicated that Petitioner understood that he had an obligation to continue making restitution payments in the outstanding amount of $2,674,415.06 [1], even after the expiration of his supervision term. (*Id*. at 46.) Throughout the Petitioner's term of supervision, "he maintained a stable residence in Saratoga, California" and has been "gainfully self-employed with Kakkar Hotel Group LLC in Whitethorn, CA, as an owner, since April 20, 2021, while earning $2,000/ month." (*Id*.)

On August 20, 2025, Petitioner returned to the United States from the United Kingdom, where he had travelled to visit his elderly mother-in-law. (Doc. 1 at 3; Doc. 8 at 3.) When he arrived at the San Francisco International Airport, he was referred to passport control for further inspection because of a biometric match. (Doc. 8-1 at 3, 18.) Through the biometric match, Customs and Border Protection ("CBP") learned about Petitioner's criminal history. (Doc. 8-1 at 2, 18–19.) Petitioner was then detained by CBP. (Doc. 1 at 3; Doc. 8-1 at 3.) According to the Petitioner, he was kept at the airport for approximately one week. (Doc. 1 at 3.) Petitioner claims that he was detained without notice or the opportunity for a due process hearing. (*Id*.) On August 21, 2025, Petitioner requested CBP release him from custody on his own recognizance, or on the payment of a bond, to which CBP never responded. (*Id*.) On August 26, 2025, CBP transferred him to ICE custody. (*Id*.) Petitioner is now currently detained at California City ICE Detention Facility in California City, California. (*Id*.)

On November 12, 2025, Petitioner appeared before the Immigration Court. (Doc. 1 at 3; Doc. 8-1 at 4.) At that time, the Immigration Judge scheduled a final hearing for January 12, 2026, to adjudicate Petitioner's I-485 application to register as permanent residence and his waiver of inadmissibility under INA § 212(h). (*Id*.) However, according to Petitioner's counsel,

---

[1] Although Petitioner repeatedly claims to have "fully paid the court-ordered restitution," (Doc. 1 at 18; Doc. 3 at 26), such claim is directly contrary to the declaration of the Probation Officer who stated that the "outstanding restitution balance as of April 8, 2024, is $2,674,415.04" as only "$1,534,200.30 has been collected." (Doc. 8-1 at 46.)

3

it is unclear whether this hearing will occur as scheduled because "the Immigration Judge assigned to [the] case—Judge Jerome M. Rothschild, Jr.—is currently on leave from the court for an indefinite period." (Doc. 10-1 at 2.)

On November 24, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his Fifth Amendment due process rights have been violated because (1) he was detained without a pre-deprivation hearing before a neutral adjudicator and (2) Petitioner's civil immigration detention does not serve any permissible purpose because he is not a flight risk or dangerous to the community. (Doc. 1 at 23–24.) Petitioner brings an as-applied challenge to his mandatory detention. (*Id.*) Petitioner requests this Court (1) enjoin Respondents from transferring him outside the jurisdiction of the Eastern District pending resolution of this case; (2) order his immediate release from DHS custody on any basis this Court finds proper; (3) order Respondents to provide a pre-deprivation hearing prior to any future re-detention where Respondents demonstrate that he is a flight risk or danger to the community; and (4) declare that DHS's detention of him violates the Fifth Amendment. [2] (Doc. 1 at 24–25.) On the same day, Petitioner also filed a motion for a temporary restraining order, reiterating the same arguments and requesting the same relief. (Doc. 3 at 14–31.)

On November 25, 2025, the Court issued a Minute Order calling for the filing of an opposition and reply related to the temporary restraining order. (Doc. 6.) Having considered the entire record, the Court **GRANTS IN PART** the request for preliminary injunctive relief and refers the matter to the assigned magistrate judge.

### III.    JURISDICTION

#### A. Habeas Corpus

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the

---

[2] The petition for writ of habeas corpus also seeks reasonable costs and attorney fees, and such further relief as the court deems just and proper. (Doc. 1 at 25.)

4

writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner seeks his immediate release from custody, which he contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (*See* Doc. 1; Doc. 3.) Thus, he properly invokes the Court's habeas jurisdiction.

### B. Judicial Review under the INA

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Thus, this Court has the authority to review the termination of Petitioner's release. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *see also Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## IV.   ANALYSIS

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). When seeking a TRO, plaintiffs must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits . . . so long

as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*.

The status quo refers to "the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co*., 256 F.2d 806, 808 (7th Cir. 1958)). In the Court's view, that is the status before Petitioner was arrested. *See Kuzmenko v. Phillips,* No. 25-CV-00663, 2025 WL 779743, at *3 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

**A.  Likelihood of Success on the Merits**

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Petitioner argues he is likely to succeed on his due process claim that he is entitled to a pre-deprivation hearing. (Doc. 3 at 14.) Specifically, Petitioner argues that Respondent violated his due process because (1) he is a non-citizen who was formerly released on conditional parole—as evidenced by ICE's decision not to detain him when released from criminal incarceration in April 2021; (2) ICE failed to give him a pre-deprivation hearing before arbitrarily arresting him in August 2025 thereby revoking his prior release; (3) there are no changed circumstances in his case that justify the revocation his prior release (e.g., he has diligently complied with immigration proceedings, has no further criminal history, has completed with his conditions of supervised release); and (4) for the past four years, preceding his detention on August 2025, he developed a liberty interest and made enduring attachments of normal life. (*See id*. at 14–18, 24–26; *see also* Doc. 1 at 12, 14, 18.)

   *a.*   *Relevant Statutory Detention Authority*

Under 8 U.S.C. § 1226(a)(2), DHS "may continue to detain" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." Such conditional release, however, may be revoked by DHS "at any time." 8 U.S.C. § 1226(b). The Board of Immigration Appeals ("BIA") has placed the following

limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981).

Alternatively, under Section 1226(c), DHS "shall take into custody any alien who is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii) of this title." 8 U.S.C. §1226(c). This includes any "alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Under this provision, non-citizens may be released "only if the Attorney General decides . . . that release . . . is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation . . . and the alien will not pose a danger to the safety of other[s] . . . and is likely to appear for any scheduled proceeding." *Id*. at § 1226(c)(4). Thus, noncitizens detained under this category are not entitled to bond hearings as those detained under § 1226(a) are. *See Jennings v. Rodriguez*, 583 U.S. 281, 303–304 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.") (emphasis in original).

Section 1226(c)'s mandatory detention requirement applies even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (finding that the Ninth Circuit's interpretation—namely, that criminal aliens not arrested immediately upon release from criminal custody are exempt from § 1226(c)'s mandatory detention and thus entitled to a bond hearing—is wrong). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." [3] *Id*. at 420. Courts routinely review as-applied constitutional challenges to § 1226(c) detention. *See e.g., Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL

---

[3] Similarly, *Jennings* only considered the text of § 1226(c), but did not consider any as-applied challenges based on constitutional due process grounds. *Jennings*, 583 U.S. at 304–306, 312 ("Because the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits[,] . . . we do not reach those arguments.").

2744397, at *5 (N.D. Cal. March 31, 2023); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).

The parties acknowledge that 8 U.S.C. § 1226(c) is the applicable statutory detention authority at issue here.[4] Respondents argue that Petitioner is unlikely to succeed on the merits because he fails to establish that under 8 U.S.C. §§ 1226(c), 1231(a)(6), and 1227(a)(2)(A)(iii), ICE lacked authority to detain him, or that he is entitled to a bond hearing under these provisions. (*See* Doc. 8 at 4–5 ("[N]either the INA nor implementing regulations provides Petitioner with such a right.").) Respondents contend that under *Demore v. Kim*, 538 U.S. 510, 526–531 (2003), mandatory detention under Section 1226(c) does not violate due process, but rather "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." *Id*. However, *Demore* involved only a facial challenge, as did *Nielsen* and *Jennings*. *Demore*, 538 U.S. at 517 ("[R]espondent challenges the statutory framework that permits his detention without bail."). Here, Petitioner argues that his detention under § 1226(c) without a bond hearing, four years after his release from incarceration, violates the Fifth Amendment *as applied to him*. (Doc. 1 at 24; Doc. 3 at 14–18.) As explained above, *Preap*, which post-dates *Demore*, expressly indicates that its decision "does not foreclose as-applied challenges . . . to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420.

        b.        *Petitioner's Right to a Bond Hearing*

The issue before the Court is whether petitioner has shown a likelihood of success on his argument he is entitled to a pre-deprivation hearing under the Fifth Amendment due process clause. On Petitioner's as-applied challenge, the analysis proceeds "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490

---

[4] In their opposition to the TRO, Respondents state, "Petitioner is currently in ICE detention pursuant to [INA §] 236(c) . . . as a criminal alien. Petitioner remains removable pursuant to [INA §] 237(a)(2)(A)(iii) . . . as Petitioner was convicted of an aggravated felony . . ." (Doc. 8-1 at 4.) These two provisions correspond to 8 U.S.C. §§ 1226(c) and 1227(a)(2)(A)(iii), respectively. Petitioner acknowledges this when he states, "Respondents indicate, for the first time, the statute under which [he] is currently detained, namely, 8 U.S.C. § 1226(c)." (Doc. 10 at 5.)

U.S. 454, 460 (1989)).  The Court finds that Petitioner is likely to succeed on the merits.

### i. Liberty Interest

First, Petitioner has a protected liberty interest under the Due Process clause.  In *Perera* and *Pham*, the petitioners were non-citizens who had been convicted of aggravated felonies, and their detention was statutorily mandated under § 1226(c).  *See Perera*, 2021 WL 2400981, at *1–2 (involving a legal permanent resident, convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021); *Pham*, 2023 WL 2744397, at *1–2 (involving a legal permanent resident, convicted of sexual assault, released from prison in 2015, and detained by ICE for the first time in 2023).  In these cases, ICE did not immediately detain the petitioners upon their release from prison.  *Id*.  Instead, the petitioners successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c).  *Id*.  Both petitioners then filed habeas petitions and TROs raising as-applied due process challenges to their detention without a bond hearing, which were granted.  *Perera*, 2021 WL 2400981, at *3–6; *Pham*, 2023 WL 2744397, at *4–7.

In *Perera*, the court explained that petitioner had an "overwhelming interest" to be free from government custody.  *Perera*, 2021 WL 2400981, at *4.  It explained that during the six years while petitioner was free from ICE custody, he had rehabilitated since his incarceration, completed probation, avoided further criminal charges, got engaged, and committed himself to his education, career, church, and growing family.  *Id*. at *1, 4.  In *Pham*, the court found that petitioner had a "clear liberty interest in freedom from detention without any process after seven years as a productive member of his community."  *Pham*, 2023 WL 2744397, at *5.  During those seven years, petitioner completed three years of probation, registered as a sex offender, got married, had his first child, and applied for U.S. citizenship.  *Id*. at *1.

Similarly, Petitioner was released from prison in April 2021, (Doc. 8-1 at 42), but was not detained by ICE until August 2025, (Doc. 8-1 at 3), about 4 years and 4 months later.  He completed his three-year term of supervised release, has paid back some of the restitution owed (Doc. 8-1 at 45–46) and has not committed additional criminal offenses. (Doc. 1 at 3.)  According to the probation officer, Petitioner "remained in compliance with the release conditions," paid

9

back $1,534,200.30 in restitution, and "understands he must continue making payments . . . after the expiration of his term of supervision." (Doc. 8-1 at 46.) For the past four years, he has been "gainfully self-employed," has "maintained a stable residence in Saratoga, California," has reconnected with his family and community, and has applied for adjustment of status under I-130 Petition for Alien Relative, I-485 application to adjust status, and I-601 waiver of inadmissibility. (*See id*; *see also* Doc. 3 at 18, 28; Doc. 8-1 at 3.) On the other hand, the evidence from the government is that Petitioner has not complied with the court orders to pay his restitution amount, having not made a since April 2024 and still owing $2,673,592.58, and he has not paid his $20,000 court-imposed fine (Doc. 8 at 3 n.2). Even still, the Court finds Petitioner has developed a liberty interest during his four years of post-conviction freedom and developed attachments of normal life.[5] *See Carballo*, 2025 WL 2381464, at *6 ("The courts in [*Perera* and *Pham*] found that the petitioners possessed a protected liberty interest arising from their several years of post-conviction freedom . . ."); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (explaining that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and

---

[5] This case does not present as strong of a liberty interest as those seen in *Carballo* and *Duong*—where criminal non-citizens were detained immediately by ICE upon release from prison, then released based on criteria that they did not pose a flight risk or danger, and then re-detained years later without bond. *Carballo*, 2025 WL 2381464, at *2–3 (explaining that upon petitioner's release from prison on July 13, 2020, ICE immediately detained him until August 5, 2020, when a district court presiding over a class action in which petitioner was a member ordered ICE to release the petitioner upon a finding that he was not a danger or flight risk, but was re-detained by ICE on August 5, 2025 without a bond determination); *Duong v. Kaiser*, No. 25-cv-07598-JST, 2025 WL 2689266, at *1–2 (N.D. Cal. Sept. 19, 2025) (explaining that upon petitioner's release from prison on March 2020, ICE immediately detained him until June 2020, when a district court presiding over the same class action ordered ICE to release the petitioner upon a finding that he was not a danger or flight risk, but was re-detained by ICE on September 2025 without a bond determination). However, as *Carballo* indicates, a petitioner could prevail under *Perera* and *Pham* on lesser grounds:

> Here, the present record indicates that petitioner was not only successful on release status in the community and in compliance with all requirements for five years, but the district court ordered his release in 2020 based on criteria including that he did not post a flight risk or present danger to the community. In contrast, the petitioners in *Perera* and *Pham* were found entitled to a post-deprivation bond hearing *even though they had not previously been granted release pending immigration proceedings*. This case presents a stronger due process concern because there has already been a court determination that petitioner did not present a flight risk or danger . . .

*Carballo*, 2025 WL 2381464, at *6 (emphasis added).

friends and to form the other enduring attachments of normal life").

        *ii.*   *Due Process Requirements*

  Second, the value of providing the Petitioner with a bond hearing is high. Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. *Garcia*, 2025 WL 1927596, at *3. To determine this, the Court considers the following factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probative value of having procedural safeguards; (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the procedural safeguards would entail. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

  Turning to the first factor, Petitioner has significant private interest in remaining free from detention. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.") As explained above, Petitioner has been out of custody for four years and four months before being re-detained. During that time, has lived successfully in his community. (Doc. 8-1 at 45–46; Doc. 3 at 18, 28.) Thus, Petitioner has an "overwhelming interest," and Respondents offer no argument to the contrary. (*See* Doc. 8 at 4–5); *Perera*, 2021 WL 2400981, at *4.

  Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, "[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). After his arrest, Petitioner's counsel asked CBP to release the Petitioner on the payment of bond, but CBP never responded, and to date, Petitioner has not received a bond hearing. (Doc. 3 at 12–13.) As Petitioner points out, the Immigration Court has denied bond hearings in similar circumstances. (Doc. 10 at 3); *see Pham*, 717 F. Supp. 3d 877, 880 (N.D. Cal. 2024) ("In February 2023, an IJ determined that under 8 U.S.C. § 1226(c), Pham was not entitled to a bond hearing.").

  Civil immigration detention, which is supposed to be "nonpunitive in purpose and

1  effect[,]" is justified when a non-citizen presents a risk of flight or danger to the community. *See*
2  *Zadvydas*, 533 U.S. at 690.  It is not the province of this Court to make a finding as to whether
3  Petitioner is a flight risk or danger.  *See Perera*, 2021 WL 2400981, at *4; *Pham*, 2023 WL
4  2744397, at *6. Even still the Court observes that the record shows that Petitioner has
5  rehabilitated since his incarceration.  After spending four years in prison for a crime dating back
6  to 2008, he has completed three years of supervised release, avoided further criminal arrests, and,
7  until April 2024, steadily paid back the restitution owed.  (*See* (Doc. 1-1 at 2–3; Doc. 8-1 at 22–
8  24, 45–46).  He is now "gainfully self-employed," maintains a "stable residence," contributes to
9  his community, and helps provide for his family.  (*See* Doc. 1-1 at 2; Doc. 8-1 at 46.)  On the
10 other hand, he stopped making restitution payments in April 2024 and has not paid his criminal
11 fine. (Doc. 8 at 3 n. 2). To date, no neutral decisionmaker has considered and weighed this
12 evidence.  (Doc. 3 at 12–13); *Perera*, 2021 WL 2400981, at *4 (citing *Nielsen*, 586 U.S. at 438
13 (Breyer, J., dissenting) (emphasizing the constitutional concern implicated by denying a non-
14 citizen a bond hearing "who committed a crime many years before and has since reformed, living
15 productively in a community").  Accordingly, the need for a bond hearing is high.
16         Turning to the last factor, the government's interest in keeping Petitioner detained without
17 bond is low.  In immigration court, custody hearings are routine and impose a "minimal" cost.
18 *Carballo*, 2025 WL 2381464, at *8 (citations omitted).  The government may have a significant
19 interest in protecting the public from dangerous criminal aliens.  However, such argument is
20 undermined somewhat by the fact that Respondents waited four years to arrest the Petitioner and
21 have not identified changed circumstances that now justify his arrest.  *Id* ("The government has
22 thus far not argued or identified any new factual circumstances in the past five years that would
23 affect such a determination."); *Perera*, 2021 WL 2400981 ("The government's interest . . . is
24 further diluted by the fact that it waited six years to detain him. ICE was aware of Perera's
25 potential removability as early as 2010. . . This time lapse significantly undermines the
26 government's interest in mandatorily detaining him."); (Doc. 8 at 3–5).
27     **B.  Irreparable Harm**
28         As for the second *Winters* factor, it is "well established that the deprivation of

constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (citations omitted). Because Petitioner is likely to succeed on the merits of his due process claim, he has "carried [his] burden as to irreparable harm." *Id.* at 995. As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972). Accordingly, the Court finds that Petitioner faces irreparable harm absent injunctive relief.

### C. The Balance of the Equities and Public Interest

Finally, the balance of the equities and the public interest tip in favor of granting injunctive relief. When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted). As discussed above, Petitioner has a strong interest in an individualized bond hearing so he can exercise his rights under the Constitution and have an opportunity to abate the imminent harms described above. *Perera*, 2021 WL 2400981, at *5. And granting relief would not deprive the government of the opportunity to prove to a neutral decisionmaker whether Petitioner poses a threat to the community or a flight risk such that detainment is necessary. *Id.*

The public interest also weighs in Petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

All this leads the Court to conclude that Petitioner has demonstrated a due process violation regarding the applicable regulations sufficient to warrant a bond hearing.

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or his conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## V.     CONCLUSION AND ORDER

1. Petitioner's Motion for Temporary Restraining Order (Doc. 3) is **GRANTED in PART**.

2. Petitioner **SHALL** be provided a *substantive* parole revocation hearing **no later than December 29, 2025,** at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released.

3. At any such hearing, the Government **SHALL** bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner **SHALL** be allowed to have counsel present.

4. The government may file a further brief on the merits of the habeas petition within 45 days. Alternatively, as soon as it can within that 30-day period, the government may file a notice that it does not intend to file further briefing. If the government files an additional brief, Petitioner may file a further brief within 30 days thereafter.

5. The matter is referred to the assigned magistrate judge for consideration of the merits of the petition as quickly as possible.

IT IS SO ORDERED.

Dated:   **December 15, 2025**

UNITED STATES DISTRICT JUDGE

14